UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 26-62-DLB

LUIS ALBERTO LLAPA GUIRACOCHA                                         PETITIONER

v.                    **MEMORANDUM ORDER AND OPINION**

KRISTI NOEM, et al.                                                   RESPONDENTS

\* \* \* \* \* \* \* \* \* \*

I.  INTRODUCTION

This matter is before the Court on Petitioner Luis Alberto Llapa Guiracocha's Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Responses (Docs. # 3 and 4), and Petitioner having filed a Reply (Doc. # 5), this matter is now ripe for review. For the following reasons, the Court will **deny** the Petition.

II.  FACTUAL AND PROCEDURAL BACKGROUND

Guiracocha is a native and citizen of Ecuador who entered the United States on or about November 20, 1997. (Doc. # 1 ¶ 17). He has been present in the United States since his entry more than twenty-eight years ago. (*Id*.). He has two children who are U.S. citizens, including a son who is enlisted in the United States Army. (*Id.* ¶ 19). He

---

[1] Petitioner files this action against Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"), Pamela Bondi, United States Attorney General, and Sam Olson, Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE"), in their official capacities, respectively (collectively, "Respondents"). Petitioner additionally filed this action against James A. Daley, Jailer, Campbell County Detention Center. Respondent Daley filed his Response, arguing that he is not Petitioner's legal or immediate custodian. (Doc. # 3). Petitioner agrees, and therefore, the Court will address only the Response filed by the other listed Respondent.

and his family have resided in Minnesota since 2018, where he is an active part of his community.  (Id. ¶¶ 25, 30).  In 2014, Guiracocha was charged and convicted of second-degree DWI in Minnesota.  (Doc. # 1-8 at 2–3).  He has received treatment and rehabilitation relating to this conviction.  (Doc. # 1 ¶ 33).

Guiracocha is pursuing several forms of relief from removal, including Cancellation of Removal for Non-Permanent Residents under 8 U.S.C. § 1229b.  (Id. ¶ 35).  He is also an applicant for a U nonimmigrant visa with the United States Citizenship and Immigration Services ("USCIS"), which is currently pending.  (Id. ¶¶ 35–38; but see Doc. # 4-1 (giving Petitioner notice that USCIS intends to deny his U-visa petition)).

On December 11, 2025, DHS initiated removal proceedings against Guiracocha by serving him with a Notice to Appear before an Immigration Judge ("IJ") pursuant to the Immigration and Nationality Act ("INA"), notifying him that he was an "alien present in the United States who has not been admitted or paroled."  (Doc. # 1 ¶ 2; see also Doc. # 1-1).  He is not currently subject to a final removal order.  (Doc. # 1 ¶ 23).  After being arrested by ICE, on January 7, 2026, Guiracocha requested and subsequently received a bond redetermination hearing before an IJ.  (Doc. # 5 at 2).  In his motion requesting bond determination, Guiracocha presented evidence of his long-term residence in the United States, his children's dependence on him, his community support, his limited and remote criminal history and subsequent rehabilitation, and his pending U-visa petition. (Doc. # 1 ¶¶ 39–40). At the hearing, the IJ "took evidence, heard argument, and issued a written decision" in which he denied Guiracocha bond because he lacked authority to hear bond requests or grant bond.  (Id.; see also Doc. # 1-11).  However, the IJ alternatively concluded that "[s]hould a reviewing body find that [the IJ] has authority to

2

hear this bond, the Court finds that [Guiracocha] is a danger and, in the alternative, a flight risk."  (Doc. # 1-11).  Guiracocha timely filed his appeal to the Board of Immigration Appeals ("BIA") on February 5, 2026.  (Doc. # 5-1).  That appeal remains pending.  He remains in custody at the Campbell County Detention Center in Newport, Kentucky.  (Doc. # 1 ¶¶ 1, 7).

A week later, Guiracocha filed the instant Petition for Writ of Habeas Corpus.  (Doc. # 1).  In his Petition, Guiracocha argues that he is being wrongfully detained at the Campbell County Detention Center and requests that the Court order his immediate release, or alternatively, a bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a).  (*Id*. ¶ 9).  On February 13, 2026, the Court directed Respondents to respond to the Petition.  (Doc. # 2).  Respondents having filed their Response (Doc. # 4) and Petitioner having filed his Reply (Doc. # 5), this matter is now ripe for the Court's review.

## III.   ANALYSIS

Guiracocha's Petition alleges that his present detention violates the INA and deprives him of the rights afforded him by the Due Process Clause of the Fifth Amendment.  (Doc. # 1 ¶ 8).

### A.   The Writ of Habeas Corpus

At its core, the writ of habeas corpus provides "a remedy for unlawful executive detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  And this relief is available to "every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  A district court may grant a writ of habeas corpus to any person who shows that he is detained within the Court's jurisdiction in violation of the Constitution or the laws and treaties of the United States.  28 U.S.C. § 2241(c)(3).  In making such a showing,

"the petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romaine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

### B.  Jurisdiction

The Court has previously found that aliens who, like Guiracocha, entered the United States without inspection and remained present for years prior to an arrest by ICE are subject to the discretionary detention scheme established by 8 U.S.C. § 1226 and not the mandatory detention required by 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Moyao Roman v. Olson*, No. 25-cv-169-DLB-CJS, 2025 WL 3268403, at *1 (E.D. Ky. Nov. 24, 2025); *Pacheco-Acosta v. Olson*, No. 25-cv-186-DLB, 2025 WL 3542128, at *1 (E.D. Ky. Dec. 10, 2025); *Lopez-Ramos v. Olson*, No. 26-cv-8-DLB, 2026 WL 372887, at *1 (E.D. Ky. Feb. 10, 2026). For the reasons set forth in those decisions, the Court likewise finds that Guiracocha is subject to the discretionary detention provisions of 8 U.S.C. § 1226.

However, Guiracocha's detention differs in a crucial respect—he has already received a bond hearing. (Doc. # 4-1). Guiracocha acknowledges this fact. (Doc. # 1 ¶ 6; Doc. # 5 at 9). Nevertheless, he claims that the IJ's decision "effectively converted [Guiracocha's] discretionary detention hearing. . . into de facto mandatory detention." (Doc. # 1 ¶ 43). Specifically, Guiracocha alleges that the IJ utilized the wrong standard of review when assessing his bond eligibility. (*Id.* ¶ 62; Doc. # 5 at 18–19). Respondents,

4

while not addressing the specific point at issue, respond that Guiracocha received all the process he was due through the bond hearing before IJ. (Doc. # 4 at 26). The Court agrees.

At all levels, jurisdiction poses a threshold question. *See Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("we must first consider whether we have jurisdiction to decide this case"). "'Federal courts,' it bears repeating, 'are courts of limited jurisdiction.'" *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007).

In the immigration context, jurisdiction centers on 8 U.S.C. § 1226(e). That statute provides that

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Accordingly, "district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond." *Fuentes v. Lyons*, No. 5:25-cv-153, 2025 WL 3022478, at *3 (S.D. Tx. Oct. 29, 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)). Still, the Supreme Court has emphasized that "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)). So, where a petitioner challenges a particular discretionary "action" taken by an IJ—as opposed to the statutory framework as a whole—

5

§ 1226(e) precludes the federal courts' review. *Jennings*, 583 U.S. at 296; *see also Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d. Cir. 2018) ("Because [the petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District Court or this Court of jurisdiction[.]" (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cleaned up)). Thus, the Court may only consider Guiracocha's Petition insofar as it challenges the extent of the Government's detention authority under the INA's framework. *See Nielsen*, 586 U.S. at 401.

Guiracocha's Petition does not challenge the Government's authority to deny bond under § 1226(a). Indeed, he recognizes that "[d]etention under [§ 1226(a)] is discretionary, not mandatory." (Doc. # 1 ¶ 53). Rather, he argues that where an IJ "misapplies [§ 1226(a)]," disregards relevant factual considerations, or "effectively treats a noncitizen as subject to mandatory detention without any statutory basis," such discretionary detention becomes unconstitutional. (*Id*. ¶ 58). In his case, Guiracocha contends that the IJ "did not purport to exercise § 1226(a) discretion or apply the individualized, factor-based analysis required by [Guerra] [2], and [Adeniji]."[3] (Doc. # 5 at 17–18). These cases, Guiracocha contends, require IJs to consider a number of factors "including length of residence, family ties, employment history, community ties, criminal record. . ., prior immigration history, and the likelihood of appearance" when making bond decisions under § 1226(a). (Doc. # 1 ¶¶ 53–54). In support of bond, Guiracocha offered "extensive evidence of his long-term residence, his U.S.-citizen children, his daughter's trauma and dependence on him, his employment and tax history, his church and

---

[2]   *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).
[3]   *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999).

6

community support, his limited and remote criminal history and rehabilitation, and his pending U-visa petition with a bona fide determination." (*Id*. ¶ 39).  Despite this, the IJ declined to set bond, finding that Guiracocha was "a danger and, in the alternative, a flight risk."  (Doc. # 1-11).  This decision, in Guiracocha's view, "effectively converted [Guiracocha's] discretionary detention under [§ 1226(a)] into de facto mandatory detention," in violation of the INA's text, BIA precedent and the requirements of due process.  (Doc. # 1 ¶ 43).

To be specific, Guiracocha asserts that the IJ's decision effectively subjected him to mandatory detention because it did not appropriately consider Guiracocha's "compelling equities and a USCIS bona fide U-visa determination," instead choosing to give more weight to "a decade-old, non-violent conviction." (*Id*. ¶ 7).  But Guiracocha's own allegations belie this claim.  Guiracocha acknowledges that he requested and received a bond redetermination hearing under § 1226(a).  (*Id*. ¶ 6; Doc. # 5 at 2).  He appeared at this hearing with counsel and offered evidence of his continued residence, community ties, work history, and criminal record.  (*Id*.).  The IJ's decision states that he fully considered the evidence presented prior to reaching his decision.  (Doc. # 1-11). Guiracocha does not dispute this fact.  He does not allege that the IJ wholly failed to consider the evidence he offered or that the hearing was procedurally improper.  Instead, he argues that the IJ erred in weighing the evidence. (*See* Doc. # 1 ¶¶ 6, 7, 41, 53, 62, 64, 70).  Thus, his Petition raises quintessentially factual arguments about the IJ's decision.  And factual challenges to an act of administrative discretion fall outside the bounds of the Court's jurisdiction.  *See Nielsen*, 586 U.S. at 401 (noting that § 1226(e) bars review of discretionary applications of § 1226); *Hernandez-Gabriel v. Tate*, No. 25-

cv-5687-H, 2026 WL 161192, at *4 (S.D. Tx. Jan. 20, 2026) (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich. Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional).

Although Guiracocha, at times, couches his Petition in the language of a statutory or constitutional critique, his Petition ultimately takes issue with the IJ's discretionary decision to deny bond. For instance, Guiracocha alleges that the IJ "misapplied [§ 1226(a)] and the standards" required by the BIA's decisions in *Matter of Guerra* and *Matter of Adeniji*. (Doc. # 1 ¶ 7). This "non-exclusive" list of factors includes an individual's "length of residence [in the United States], family ties, employment history, community ties, criminal record . . . prior immigration history, and the likelihood of appearance [at future proceedings]." (*Id.* ¶ 53). But Guiracocha also alleges that he offered evidence and argument addressing each of these factors. (*Id.* ¶¶ 39–40). And the IJ's decision was made "[a]fter full consideration of the evidence presented[.]" (Doc. # 1-11). Elsewhere in his Petition, Guiracocha alleges not that the IJ failed to consider certain factors but that he failed to view all evidence the same. (*See, e.g.,* Doc. # 1 ¶ 71 (opining that the IJ's disregard of Guiracocha's rehabilitation, U-visa determination and positive equities is a misapplication of § 1226(a))). He specifically takes issue with the

8

IJ's purportedly excessive reliance on his criminal record in reaching his determination that Guiracocha poses a danger or flight risk. (*Id.* ¶¶ 7, 71). These allegations contradict Guiracocha's claim that the IJ's decision "misapplied the statute and regulations and effectively convert[ed § 1226(a)] into mandatory detention. . . ." (*Id.* ¶ 53). On the contrary, Guiracocha's Petition indicates that the IJ adhered to the procedures laid out in § 1226(a) and made a bond determination based on the evidence presented.

Accordingly, Guiracocha's Petition does not challenge the INA's statutory framework or the extent of the Government's detention authority. *See Nielsen*, 586 U.S. at 401. He does not claim that his bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond. Instead, he merely argues that the IJ came to the wrong conclusion after reviewing the evidence. (Doc. # 1 ¶¶ 7, 69, 71). The Supreme Court has repeatedly recognized that § 1226(e) bars judicial review of such decisions. *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516; *see also Espinosa v. ICE Field Office Director*, No. 2:26-cv-34-JHC, 2026 WL 369799, at *1 (W.D. Wash. Feb. 10, 2026) (finding a lack of jurisdiction where the petitioner provided "only factual arguments as to why he should be released on bond"); *Bazurto v. Olson*, No. 1:26-cv-122-SEB-CSW, 2026 WL 285993, at *5 (S.D. Ind. Feb. 3, 2026) ("Section 1226(e) might preclude this Court's intervention if [petitioner] requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result.").

Because Guiracocha challenges a discretionary application of § 1226(a) and fails to raise a cognizable challenge to the underlying statutory framework or the extent of the Government's detention authority, § 1226(e) precludes this Court's review.

9

## IV. CONCLUSION

For the foregoing reasons, Guiracocha's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED.**

This 5th day of March, 2026.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-62 MOO re Habeas Petition.docx